UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 13-109(1)(DSD)

United States of America,

        Plaintiff,

v.                                                    **ORDER**

Cebrian Omar Sims,

        Defendant.

This matter is before the court upon the motion to vacate sentence under 28 U.S.C. § 2255. Based on a review of the file, record, and proceedings herein, and for the following reasons, the motion is granted as set forth below.

**BACKGROUND**

In May 2013, Sims was indicted on one count of being an armed career criminal in possession of a firearm. ECF No. 1. Sims pleaded guilty to the charge in August 2013. ECF No. 37. In the plea agreement, Sims admitted that, on April 24, 2013, he was involved in a fight in St. Paul, Minnesota, involving twenty to thirty people. Id. ¶ 2. During the fight, witnesses heard gunshots and subsequently saw a man carry a firearm into a nearby barber shop. Id. Sims admitted that he obtained the gun used in the shooting from the shooter and carried it to the barber shop, where he then tried to hide the weapon. Id. In the plea agreement,

Sims also admitted that he had three or more prior felony convictions that prohibited him from lawfully possessing a firearm. Id. Because of his previous felony convictions, the Armed Career Criminal Act (ACCA) sentencing enhancement applied and Sims was sentenced in January 2014 to the mandatory minimum of 180 months' imprisonment followed by five years' supervised release. See ECF No. 60; 18 U.S.C. § 924(e).

Sims now moves to vacate his sentence under 28 U.S.C. § 2255 on the grounds that neither his ACCA enhancement nor his felon in possession convictions were lawful. Sims argues that under recent decisions in Johnson v. United States, 576 U.S. 591 (2015), and Chazen v. Marske, 938 F.3d 851 (7th Cir. 2019), he should no longer be considered a career offender and that, as a result, the ACCA enhancement must be vacated. Sims further argues that under Rehaif v. United States, 139 S. Ct. 2191 (2019), his conviction for being a felon in possession of a weapon is no longer lawful and must therefore be vacated. The government opposes Sims' motion on both grounds.

## DISCUSSION

### I.  Standard of Review

Section 2255 provides a defendant with a limited opportunity to challenge the constitutionality, legality, or jurisdictional basis of a sentence imposed by the court. This collateral relief

2

is an extraordinary remedy, reserved for violations of constitutional rights that could not have been raised on direct appeal. United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996). "Beyond that, the permissible scope of a § 2255 collateral attack on a final conviction or sentence is severely limited; an error of law does not provide a basis for collateral attack unless the claimed error constituted a fundamental defect which inherently results in a complete miscarriage of justice." Sun Bear v. United States, 644 F.3d 700, 704 (8th Cir. 2011) (internal quotation marks and citations omitted).

**II.  ACCA Claim**

Under the ACCA, a defendant with three or more previous convictions for a "violent felony" faces at least fifteen years' imprisonment. See 18 U.S.C. 924(e). Sims was sentenced under ACCA based on one felony conviction for Minnesota first degree burglary, one felony conviction for fleeing police in a motor vehicle, and four felony convictions for Minnesota second degree burglary. Sims now argues that his convictions for fleeing police in a motor vehicle and for second degree burglary are no longer violent felonies under ACCA. The government concedes that Sims's felony conviction for fleeing police in a motor vehicle is no longer a predicate offense for ACCA purposes. See ECF No. 85, at 4. Because Sims does not argue that his first degree burglary conviction is not an ACCA predicate offense, the only question before the court

3

on this matter is whether his four convictions for second degree burglary remain ACCA predicate offenses.

A "violent felony" under ACCA is any crime that (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the force clause); or (2) "is burglary, arson, or extortion, involves the use of explosives" (the enumerated-offense clause), or "otherwise involves conduct that presents a serious potential risk of physical injury to another" (the residual clause).  18 U.S.C. §§ 924(e)(2)(B)(i)-(ii).  As noted, at the time of sentencing, Sims had more than three prior convictions that the court deemed to be violent felonies.  The court therefore sentenced him under the ACCA.  Since then, however, relevant case law has altered the "violent felony" analysis.

In Johnson, the Supreme Court struck down the residual clause as unconstitutionally vague.  See Johnson, 135 S. Ct. at 2563.  In Chazen, the Seventh Circuit held that a conviction for Minnesota second-degree burglary does not qualify as a predicate violent felony under the ACCA.  938 F.3d at 859-60.  Other judges in this District have persuasively held that, consistent with Johnson and Chazen, prior convictions for second degree burglary under Minnesota law are not "violent felonies" and therefore do not constitute predicate offenses under the ACCA.  See United States v. Isaacson, No. 07-320, 2020 WL 6566466, at *2-3 (D. Minn.

4

Nov. 9, 2020); United States v. Boldt, No. 09-37, 2020 WL 5407910, at *2 (D. Minn. Sept. 9, 2020); United States v. Bugh, Nos. 11cr72, 19cv2540, 2020 WL 2320141, at *8-15 (D. Minn. May 11, 2020).

Based on the foregoing cases, the court finds that Sim's previous second degree burglary convictions do not constitute predicate offenses under the ACCA. As a result, Sims is "actually innocent" of being an armed career criminal and the court must vacate the previously imposed sentencing enhancement under the ACCA.[1]

### III. Rehaif Claim

As an initial matter, the court notes that Sims's Rehaif claim is procedurally defaulted because he did not raise this issue on direct appeal. See Bousley v. United States, 523 U.S. 614, 621 (1998) (explaining that a claim that a plea was involuntary and unknowing is procedurally defaulted on collateral review if the

---

[1] A motion under § 2255 must be filed within one year from "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1). Sims's motion falls outside of this limitation period. Sims argues that he is entitled to relief despite this procedural default because he has demonstrated "actual innocence." This exception to procedural default applies when the defendant is actually innocent of the crime of conviction. See Lofton v. United States, 920 F.3d 572, 576-77 (8th Cir. 2019) (noting that an "illegal sentence presents a 'miscarriage of justice' that § 2255 permits us to correct, despite his failure to raise the issue earlier"). Here, the court finds that it may properly consider Sims's motion and grant the relief he seeks because his claim falls within the actual-innocence exception to the statute of limitations. Specifically, as discussed, Sims is actually innocent of being an armed career criminal.

issue was not first raised on direct appeal). A procedural default may, however, be excused if the defendant can demonstrate cause excusing his procedural default and actual prejudice.[2] Id. at 622. The court agrees with Sims that he has shown cause for not raising this issue on direct appeal because his Rehaif argument, outlined below, was not "reasonably available" to him at that time. See Reed v. Ross, 468 U.S. 1, 16-17 (1984) (explaining that a claim may not be reasonably available when it contradicts "a longstanding and widespread practice to which [the Supreme Court] has not spoken, but which a near-unanimous body of lower court authority has expressly approved"); Rehaif, 139 S. Ct. at 2209, 2209 n.6 (Alito, J., dissenting) (explaining how the Court's decision in Rehaif overturned precedent from every single Court of Appeals to have addressed the issue, which included all but the Second and Sixth Circuit Courts of Appeals). Sims must still, however, establish actual prejudice.

In Rehaif, the Supreme Court held that, in order to be convicted under 18 U.S.C. § 922(g), the government "must prove that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." 139 S. Ct. 2191, 2200 (2019). In the case of Sims's

---

[2] As discussed above, a procedural default may also be excused if the defendant can show actual innocence. Here, Sims does not argue that he is actually innocent of being a felon in possession of a firearm.

felon in possession charge, this means the government had to prove that Sims knew at the time he possessed the firearm that he "has been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1); see also United States v. Caudle, 968 F.3d 916, 922 (8th Cir. 2020). This "knowledge can be inferred from circumstantial evidence." Rehaif, 139 S. Ct. at 2198.

Regarding this knowledge, the plea agreement states that "[Sims] has prior felony convictions that prohibit him from lawfully possessing the firearm." ECF No. 37 ¶ 10. During the colloquy at Sims's change of plea hearing, the government stated that "in the factual basis, we include that you have prior felony convictions that prohibit you from lawfully possessing [a] firearm, and those prior convictions include three violent crime conviction[s] that [are] listed in the Indictment. You understand that?" See Change of Plea Hr'g Tr., Filed Under Seal Aug. 16, 2013. Sims replied, "Yes, I do." Id. Although the plea agreement and colloquy established that Sims was a felon at the time he possessed the weapon, neither established definitively that Sims knew that he was a felon at the time he possessed the weapon. Because of this Rehaif error, Sims's guilty plea was constitutionally defective. See United States v. Coleman, 961 F.3d 1024, 1027 (8th Cir. 2020).

To establish that this error caused him actual prejudice, Sims must show than an error worked to his "actual and substantial disadvantage...." United States v. Frady, 456 U.S. 152, 171 (1982). Sims first argues that the Rehaif error constituted violations of his Fifth Amendment right to due process and his Sixth Amendment right to autonomy over his defense. Sims further contends that these violations were structural errors and were thus per se prejudicial to him. In support of this argument, Sims relies on United States v. Gary, 954 F.3d 194 (4th Cir. 2020).

In Gary, the Fourth Circuit Court of Appeals analyzed a plea proceeding similar to Sims's, and held that the court erred in accepting the defendant's plea because he was not informed that the government had to prove he knew of his felon status at the time he possessed the weapon. 954 F.3d at 202. The court further held that this error was structural, and therefore per se prejudicial, because it violated the defendant's Fifth Amendment right to due process and his Sixth Amendment right to autonomy in making decisions about his defense. Id. at 205–06.

The Eighth Circuit rejected the contention that such a violation of a defendant's Fifth Amendment right to due process is a structural error in Coleman. 961 F.3d at 1030–31. Admittedly, the Eighth Circuit did not specifically address whether a plea proceeding's violation of a defendant's Sixth Amendment right is structural error, but the court nevertheless finds that Coleman is

8

controlling here. Although it did not discuss a defendant's Sixth Amendment right to autonomy over his defense, the court in Coleman noted that the "Supreme Court has found structural error only in a very limited number of cases." 961 F.3d at 1029 (internal quotation omitted). The court went on to discuss how the Supreme Court has never "identified a constitutionally invalid guilty plea as structural error." Id. Of the circuit courts of appeals to have addressed the issue, only the Fourth Circuit, in Gary, has held that such constitutional violations constitute structural error. Id. at 1029 n.3. The Fifth, Sixth, and Tenth Circuits have all determined that such constitutional errors in plea proceedings are not structural. Id. Given the Eighth Circuit's holding in Coleman, that constitutionally invalid guilty pleas do not amount to structural error, the court determines that Sims has not established structural error that is per se prejudicial here.

Nor has Sims established prejudice under the traditional analysis, because he has not shown that the error in his plea proceeding worked to his "actual and substantial disadvantage," such that he can demonstrate "a reasonable probability that, but for the error, he would not have entered the plea." Coleman, 961 F.3d at 1030 (internal quotation omitted). This is because Sims's knowledge of his felon status may be inferred from the fact that, before he possessed the weapon underlying the instant conviction, Sims had spent more than one year in prison on multiple occasions

9

based on his previous felony convictions. See Rehaif, 139 S. Ct. at 2198; PSR ¶¶ 35, 36, 38. Indeed, the "lack of a plausible ignorance defense means that any § 922(g) defendant who served more than a year in prison on a single count of conviction will face an uphill battle to show that a Rehaif error in a guilty plea affected his substantial rights." Caudle, 968 F.3d at 922 (quoting United States v. Williams, 946 F. 3d 968, 974 (7th Cir. 2020)). Because Sims cannot show that the Rehaif error in his plea proceeding prejudiced him, his claim is procedurally defaulted and relief under § 2255 must be denied.

**IV. Resentencing**

Because the court has determined that the ACCA enhancement no longer applies to Sims, the court must determine the appropriate sentence. Without the ACCA enhancement, the court determines that the applicable base offense level is fourteen under U.S.S.G. § 2K2.1(a)(6). The court further determines that a four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B) applies because Sims possessed the firearm at issue "in connection with another felony offense...." Sims admitted in the plea agreement that he "obtained the firearm from the shooter that day after the shooting and carried it from the area around the shooting to the nearby barber shop where [he] tried to hide the firearm," which constitutes a violation of Minnesota Statute § 609.495. See ECF No. 37 ¶ 2; Minn. Stat. § 609.495, subdiv. 3. With a three-level reduction

for acceptance of responsibility, that leaves Sims with a total offense level of fifteen.

At the time of Sims's original sentencing, the court determined that he had a criminal history score of twelve, putting him in the criminal history category of V. While incarcerated, Sims was convicted of another federal felony offense and was sentenced to a twenty-one-month sentence, to be served consecutive with the sentence imposed by this court. See United States v. Sims, No. 3:17-CR-050 (W.D. Wis. Jan. 29, 2018), ECF No. 38. This conviction increases Sims's criminal history score by three points, to fifteen, bringing his criminal history category to VI. See U.S.S.G. § 4A1.1(a); United States v. Tidwell, 827 F.3d 761, 763–64 (determining that, when calculating the criminal history score on resentencing after a successful § 2255 motion, it is proper to include convictions imposed after the initial sentencing but before the resentencing).

With a base offense level of fifteen and a criminal history category of VI, the applicable Guidelines imprisonment range is forty-one to fifty-one months. Taking into account the factors set forth in 18 U.S.C. § 3553(a), the court now imposes a sentence of fifty-one months' imprisonment, followed by three years' supervised release.

The court finds that the sentence imposed is appropriate and reasonable in light of the considerations set forth in 18 U.S.C.

§ 3553(a).  The court has taken into account the nature and circumstances of Sims's offense, as well as his history and characteristics, and finds that the sentence imposed is sufficient, but not greater than necessary, to afford adequate deterrence to future criminal conduct.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that:

1. The motion to vacate under 28 U.S.C. § 2255 [ECF No.80] is granted as set forth above;

2. Sims is resentenced to fifty-one months' imprisonment, to be followed by three years of supervised release;

3. Sims shall serve his term of supervised release under the following conditions:

- Sims must report to the U.S. Probation and Pretrial Services Office in the district to which he is released within 72 hours of release from the custody of the Bureau of Prisons.

- Sims shall not commit any crimes, federal, state, or local.

- Sims shall not illegally possess a controlled substance. He shall refrain from any unlawful use of a controlled substance.  He shall submit to one drug test within 15 days of release from imprisonment and at least two

        periodic drug tests thereafter, as determined by the court.

- Sims shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon.
- Sims shall cooperate in the collection of DNA as directed by the probation officer.

4. Further, Sims shall abide by the standard conditions of supervised release that have been adopted by the court including the following special conditions:

- Sims shall reside for a period of up to 120 days in a residential reentry center as approved by the probation officer and shall observe the rules of that facility.
- Sims shall participate in a program for substance abuse as approved by the probation officer. That program may include testing and inpatient or outpatient treatment, counseling, or a support group. Further, he shall contribute to the costs of such treatment as determined by the Probation Office Co-Payment Program, not to exceed the total cost of treatment.
- Sims shall submit his person, residence, office, vehicle, or an area under his control to a search conducted by a United States Probation Officer or supervised designee, at a reasonable time and in a

    reasonable manner, based upon reasonable suspicion of contraband or evidence of a supervision violation. He shall warn any other residents or third parties that the premises and areas under his control may be subject to searches pursuant to this condition.

- Sims shall comply with the District of Minnesota's Offender Employment Policy which may include participation in training, counseling and/or daily job searching as directed by the probation officer.

5. The Bureau of Prisons shall determine Sims's appropriate release date, taking into account the consecutive twenty-one month sentence imposed in United States v. Sims, No. 3:17-CR-050 (W.D. Wis. Jan. 29, 2018).

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: December 8, 2020

                                          s/David S. Doty
                                          David S. Doty, Judge
                                          United States District Court